**JASON H. LEE**
**DAVID ZHOU**
**JASON BUSSEY**
**WILLIAM SALZMANN**
**JONATHAN GRANT**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**44 Montgomery Street, Suite 700**
**San Francisco, CA 94104**
**Telephone: (415) 705-2500**
**Facsimile: (415) 705-2501**
Email: busseyja@sec.gov; salzmannw@sec.gov;
       grantj@sec.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>         Plaintiff,<br><br>    v.<br><br>**JEFFREY PUZZULLO**<br><br>         Defendant. | <u>**COMPLAINT**</u><br>**1:26-cv-1738**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission (the "Commission"), for its complaint against Defendant Jeffrey Puzzullo, alleges as follows:

<u>**SUMMARY**</u>

1. This matter involves the fraudulent scheme to offer and sell approximately $284 million in municipal bonds, now defaulted, issued for the benefit of Legacy Cares, Inc. ("Legacy Cares"), an Arizona nonprofit corporation, in August 2020 and June 2021. Legacy Cares issued the bonds through the Arizona Industrial Development Authority, an Arizona state entity known as a "conduit issuer," which issues municipal bonds for third-party borrowers, such as Legacy Cares. Randall ("Randy") Miller founded and incorporated Legacy Cares for the purpose of issuing the bonds.

1

2.      The bond proceeds were used by Legacy Cares to finance the construction of a multi-sports park and family entertainment center (the "Sports Complex") in Mesa, Arizona. The Sports Complex was operated by Legacy Sports USA, LLC ("Sports USA"), which was founded by Randy Miller.

3.      To market the bonds to investors, the underwriter for both bond offerings (the "Underwriter") distributed limited offering memoranda for the 2020 and 2021 bond offerings. Both the 2020 and 2021 offerings were for revenue bonds, which meant that the cash required to pay interest and principal back to the bondholders was to come from the revenue generated by the Sports Complex after it opened in 2022. The limited offering memorandum for the 2020 bond offering (the "2020 Offering Memorandum") included financial projections anticipating revenue that was multiple times the amount needed to cover the payments to investors in the 2020 bonds. These financial projections were prepared by Defendant Jeffrey Puzzullo at the direction of Randy Miller's son, Chad Miller, and with input from Jeffrey De Laveaga, an executive at Sports USA.

4.      The financial projections in the 2020 Offering Memorandum were false and misleading. The revenue anticipated in the financial projections was based on indications of interest in the Sports Complex, and was purportedly evidenced by dozens of "letters of intent" that were attached to the 2020 Offering Memorandum and therefore provided to investors. These letters purported to be from various sports clubs, leagues, and other entities expressing the intent to move their events or operations to the Sports Complex. The 2020 Offering Memorandum referenced the letters throughout the document as the basis for the revenue expectations, and included the letters as an attachment.

5.      However, the majority of the more than 50 letters of intent were either totally fabricated or materially altered in some fashion, including the forging of signatures, by Defendant Puzzullo, along with Randy Miller, Chad Miller, and De Laveaga, in the months leading up to the 2020 bond offering. Puzzullo knew or was reckless in not knowing that he was creating false documents, and that the documents would be disseminated to investors.

6. In addition to the fabricated letters of intent, Defendant Puzzullo, working with Randy Miller, Chad Miller, and De Laveaga, also, knowingly or recklessly, created a set of 25 so-called "pre-contracts," which, like the letters of intent, are referenced throughout the 2020 Offering Memorandum as supporting the revenue expectations. The 2020 Offering Memorandum represented that the pre-contracts constituted "binding" arrangements with Sports USA to use the Sports Complex and pay fees. The pre-contracts were listed in the 2020 Offering Memorandum, and copies of the pre-contracts themselves were provided directly to potential investors prior to the sale of the 2020 bonds through an online investor "data room" hosted by the Underwriter (the "investor data room"). These pre-contracts were purportedly signed by some of the same sports leagues and entities falsely identified as having previously submitted letters of intent. Like the fabricated letters of intent, however, most of the pre-contracts were fake.

7. The limited offering memorandum for the 2021 bond offering (the "2021 Offering Memorandum," and, together with the 2020 Offering Memorandum, the "Offering Memoranda") incorporated the same false projections, letters of intent, and pre-contracts from the 2020 Offering Memorandum.

8. The Sports Complex opened in January 2022 with far fewer events and much lower attendance than had been falsely projected in the Offering Memoranda. The Sports Complex generated less than $28 million in revenue for the year, in contrast to the $96 million in year-one revenue projected in the Offering Memoranda.

9. Due to this revenue shortfall, in October 2022, when it came time to begin repayment to the bondholders, Legacy Cares defaulted on both the 2020 and 2021 bonds. Legacy Cares subsequently filed bankruptcy proceedings in May 2023 and the Sports Complex is now owned by a new entity. According to bankruptcy filings, the bonds' investors recouped through the bankruptcy less than $2.5 million of the $284 million they had invested.

10. As a result of the conduct described above, Defendant Puzzullo violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule

3

10b-5 thereunder [17 C.F.R. § 240.10b-5], and Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

11. The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

12. The Commission seeks a final judgment against Defendant Puzzullo: (a) permanently enjoining Puzzullo from violating the federal securities laws and rules that this complaint alleges he violated; (b) permanently enjoining Puzzullo from, directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Puzzullo from purchasing or selling securities for his own personal accounts, pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)]; (c) ordering Puzzullo to pay disgorgement with prejudgment interest, pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (d) ordering Puzzullo to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 20(e), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77t(e), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

14. Defendant Puzzullo, directly or indirectly, made use of the means and instruments of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

15. Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. Acts, transactions, practices, and courses of business that form the basis for the violations alleged in this complaint occurred in this District. For example, certain investors in both the 2020 and 2021 bonds reside in this District and accessed offering documents in this District, and the clearing agency and securities depository that facilitated the transfer of both the 2020 and 2021 bonds is located in this District.

## DEFENDANT

16. **Jeffrey Puzzullo**, age 70, is a resident of San Diego County, California. At all relevant times, Puzzullo worked as a consultant for Sports USA.

## RELATED INDIVIDUALS[1]

17. **Randall J. Miller**, age 71, was a resident of Maricopa County, Arizona during the relevant period. At all relevant times, Randy Miller was the founder, Chairman, and Managing Member of Sports USA. He also founded and incorporated Legacy Cares.

18. **Chad J. Miller**, age 40, was a resident of Maricopa County, Arizona during the relevant period. Chad Miller is the son of Randy Miller. At all relevant times, Chad Miller was the CEO of Sports USA.

19. **Jeffrey De Laveaga**, age 56, is a resident of Maricopa County, Arizona. At all relevant times, De Laveaga was the Chief Operating Officer of Sports USA.

---

[1] Randy Miller, Chad Miller, and Jeffrey De Laveaga (collectively, the "Prior Defendants") are defendants in the related case, *SEC v. Randall J. Miller, Chad J. Miller, and Jeffrey De Laveaga*, No. 1:25-cv-02702 (S.D.N.Y. filed April 1, 2025).

**RELATED ENTITIES**

20. **Legacy Cares, Inc.** is an Arizona nonprofit corporation and a 501(c)(3) organization formed by Randy Miller to develop, own, and operate sports and family entertainment facilities. Legacy Cares' principal place of business is in Mesa, Arizona. Legacy Cares was the conduit borrower for the bonds at issue in this complaint. On May 1, 2023, Legacy Cares filed for Chapter 11 bankruptcy and is currently in a liquidation trust.

21. **Legacy Sports USA, LLC** is an Arizona limited liability company and was the manager of the Sports Complex. At all relevant times, Puzzullo was engaged as a consultant for Sports USA. Sports USA's principal place of business was in Scottsdale, Arizona. Shortly before Legacy Cares' bankruptcy filing, Sports USA ended its role as the Sports Complex's manager and ceased all operations.

22. **Arizona Industrial Development Authority** (the "Arizona Authority") is a political subdivision of the state of Arizona and an Arizona nonprofit corporation. The Arizona Authority served as the conduit issuer for the 2020 and 2021 bonds.

**FACTS**

**I.   Background**

23. Prior to 2020, Randy Miller attempted for several years to develop other sports parks concepts by seeking private loans or investor funding. After proposing at least three different locations in the Phoenix area but failing to attract sufficient funds, he began to pursue the use of municipal bonds to finance the construction of the Sports Complex in Mesa, Arizona.

24. In August 2020, the Arizona Authority acted as the conduit issuer for the sale of $250.8 million of economic development revenue bonds for the construction of the Sports Complex. The Arizona Authority acted solely as the conduit issuer with no responsibility for making interest and principal payments on the bonds. According to the 2020 Offering Memorandum, Legacy Cares was responsible for making payments to bondholders and would do so using revenue generated by the Sports Complex.

25. The conduit borrower on the transaction was Legacy Cares. Randy Miller incorporated Legacy Cares as an Arizona non-profit entity so it could qualify as the conduit borrower for the municipal bond offerings and facilitate a portion of the bonds being issued on a tax-exempt basis as qualified 501(c)(3) bonds.

26. Randy Miller set up Legacy Cares to operate as an independent shell for the sole purpose of issuing the bonds, and Legacy Cares retained Sports USA as a for-profit entity to serve as the Sports Complex's manager. Accordingly, Legacy Cares contracted with Sports USA to oversee the construction of the Sports Complex and manage the facility's subsequent operations. Sports USA, through Puzzullo and the Prior Defendants, also had the critical function of providing information about the Sports Complex for use in the Offering Memoranda, including the preparation of the financial projections and supporting documentation provided to investors.

27. For its role, Sports USA was to receive a variety of payments from the Sports Complex, including 5% of all capital expenditures upfront as a "development fee," 7% of all revenue as a "basic fee," 5% of all gross profits as an "incentive fee," and then additional guaranteed monthly "accounting fee[s]" and expense reimbursements.

28. In June 2021, Randy Miller and Chad Miller sought additional funding for the Sports Complex through municipal bonds, and the Arizona Authority ultimately issued an additional $33 million of revenue bonds, also for the construction of the Sports Complex. Once again, according to the 2021 Offering Memorandum, Legacy Cares bore the sole responsibility for making payments to bondholders and would do so using the Sports Complex's revenue.

29. As, respectively, Chairman and Chief Executive Officer of Sports USA, both Randy Miller and Chad Miller had controlling authority over Sports USA at all relevant times. De Laveaga served as Sports USA's Chief Operating Officer and was paid a consulting fee by Sports USA during the relevant period. Puzzullo worked as the Sports Complex's construction consultant and was paid a consulting fee by Sports USA during the relevant period.

30. The Sports Complex was designed to be one of the largest of its kind in the United States, consisting of over 300 acres of indoor and outdoor sports fields, courts, locker rooms, a 10,000-person capacity stadium, office spaces, restaurants, and other entertainment options. The size and cost of the Sports Complex meant that, to be successful, it would need to be fully utilized for events and activities spanning many different types of sports, such as baseball, football, soccer, volleyball, pickleball, basketball, e-sports, and CrossFit.

## II.   Puzzullo Knowingly or Recklessly Made Materially False and Misleading Statements to Investors in the 2020 Bond Sale.

31. The 2020 Offering Memorandum presented investors with false and misleading projected revenue and other information designed by Puzzullo and the Prior Defendants to provide assurances that the Sports Complex would generate the revenue necessary to make timely bond payments. Specifically, the 2020 Offering Memorandum included financial projections drafted by Puzzullo, which stated that the Sports Complex would generate over $96 million in revenue in its first year of operation. Puzzullo and the Prior Defendants supported this high revenue number with representations that the venue would be nearly fully booked consistently starting from the opening day.

32. The underlying support for the revenue projections supposedly came from more than 50 letters of intent, purportedly from various sports organizations and leagues that had pledged to move events or operations to the Sports Complex.

33. In reality, Sports USA had not generated anywhere near enough interest from sports organizations to support the revenue projections. Rather, Puzzullo, along with the Prior Defendants, knowingly or recklessly, fabricated or materially altered the majority of the letters of intent to make it appear that the Sports Complex would be fully committed in its first year of operation. These false documents, in turn, served as the bases for other false and misleading representations to investors, including the 2020 Offering Memorandum's revenue projections, information in a consultant report drafted by Puzzullo and included in the 2020 Offering

Memorandum, and further false so-called "pre-contracts" that purported to be binding agreements with sports entities for the use of the Sports Complex and the payment of fees.

      **A.**     **Fabricated and Altered Letters of Intent**

34. The letters of intent prepared by Puzzullo and the Prior Defendants were purportedly from a wide array of local, national, and international sporting organizations, including several world-renowned national and international sports institutions. Many of the purported letters expressed an intent to move certain games, leagues, or tournaments to the Sports Complex, while others stated that their organizations would be moving their entire operations there. Certain of the letters included specific attendance and revenue projections for events to take place at the Sports Complex.

35. In the year leading up to the offering of the 2020 bonds, Puzzullo, along with the Prior Defendants, knowingly or recklessly fabricated or materially altered the majority of the letters of intent. Some of the letters were entirely fake, with the phony documents including, among other things, incorrect letterhead from outdated sources, forged signatures, and incorrect or misspelled signatories. The creation and gathering of the fraudulent letters of intent was a collaborative effort amongst Puzzullo and the Prior Defendants, who communicated with each other instructions from Randy Miller and Chad Miller and shared drafts of fake documents. Puzzullo, Randy Miller, Chad Miller and De Laveaga each personally fabricated false documents.

36. As Puzzullo knew, or was reckless in not knowing, Chad Miller then provided the false letters of intent to the Underwriter to be used as an attachment to the 2020 Offering Memorandum and to be included in the Underwriter's investor data room. This investor data room was used by both potential bond investors and other bond participants to evaluate the bonds in the weeks prior to the 2020 bond offering.

      **B.**     **Fabricated Pre-Contracts**

37. Puzzullo, at the direction of and along with Randy Miller and Chad Miller, also fabricated so-called "pre-contracts" representing commitments from sports providers and caused

these false documents to be provided to investors in connection with the offering of the 2020 bonds.

38. Because the dates on some of the letters of intent were stale, the Underwriter for the bonds had requested that Sports USA obtain additional communications from the purported letter writers that were more current and that reflected a further level of commitment from those entities. In response to this request, Chad Miller, with Puzzullo and others at Sports USA working at Chad Miller's direction, fabricated pre-contracts with false signatures from some of the entities that had purportedly signed the letters of intent. The pre-contracts falsely stated that they constituted "binding agreement[s]" between Sports USA and the entities to enter into "formal use agreement[s]" to hold events at the Sports Complex within 90 days of groundbreaking. Randy Miller, Chad Miller, and Puzzullo knew, or were reckless in not knowing, that the "agreement[s]" represented by the fake pre-contracts were fictitious, and that these documents were created for the purpose of deceiving bond investors. As Puzzullo knew, or was reckless in not knowing, Chad Miller provided the pre-contracts to the Underwriter and these fake documents were also included in the investor data room in the weeks prior to the offering of the 2020 bonds.

### C. False and Misleading Projected Revenue

39. The 2020 Offering Memorandum was replete with references to the fabricated letters of intent and pre-contracts to assure investors of potential revenue and the viability of the Sports Complex.

40. Notably, the 2020 Offering Memorandum included projected financial information, including a "Summary Five-Year Pro Forma" financial statement detailing the expected revenue and expenses for the first five years of the Sports Complex's operation, starting in 2022. According to this pro forma financial statement, the Sports Complex was expected to generate over $96 million in revenue in 2022, which was multiple times the amount owed in payments to bondholders that year. Puzzullo prepared the pro forma financial statement at the direction of Chad Miller in the weeks prior to the offering of the 2020 bonds. Chad Miller and

10

De Laveaga then reviewed and approved the pro forma financial statement before providing it to the Underwriter for inclusion in the 2020 Offering Memorandum.

41. Puzzullo and the Prior Defendants knew, or were reckless in not knowing, that the projected revenue in the pro forma financial statement was false and misleading because it was based on the false letters of intent and pre-contracts.

### D. False and Misleading "Economic and Fiscal Impact Summary" Relying on the Fabricated Letters of Intent.

42. To further the fraud, in coordination with Randy Miller and Chad Miller, Puzzullo drafted and signed a consultant report, titled "Economic and Fiscal Impact Summary." Puzzullo's consultant report was attached to the 2020 Offering Memorandum and purported to demonstrate the positive impact the Sports Complex would have on the local economy. It also served to corroborate the bases for the Sports Complex's inflated revenue expectations. However, the assumptions in the report, including the expected scale of the Sports Complex's events and the estimation of several million visitors per year starting in the first year of operation, were based on the same fabricated letters of intent Puzzullo had used to support the pro forma financial statement.

43. As Puzzullo knew, or was reckless in not knowing, Chad Miller then provided Puzzullo's consultant report to the Underwriter for inclusion in the 2020 Offering Memorandum. Puzzullo further knew, or was reckless in not knowing, that his consultant report was false and misleading because it was based on letters of intent he knew were fabricated.

### III. The 2021 Offering Memorandum Incorporated the Same False and Misleading Statements from the 2020 Offering Memorandum.

44. The second offering occurred in June 2021 when the Arizona Authority issued $33 million of additional bonds, also to be used to construct the Sports Complex. The 2021 Offering Memorandum incorporated the entire 2020 Offering Memorandum, including the earlier document's false and misleading revenue projections, the fabricated letters of intent, and descriptions of the fabricated pre-contracts. Puzzullo knew, or was reckless in not knowing, that

11

the false and misleading statements described above regarding the 2020 bonds were incorporated into the 2021 Offering Memorandum and were misleading to investors in the 2021 bonds.

### IV. Puzzullo Acted Knowingly or Recklessly to Deceive Bond Investors.

45. The scheme to offer and sell the bonds through the use of false and misleading financial projections, the false letters of intent and pre-contracts, and the false and misleading consultant report, was conducted knowingly or recklessly by Puzzullo. Puzzullo acted with scienter in fabricating and altering numerous letters of intent and pre-contracts, which he knew, or was reckless in not knowing, would be provided to potential investors. Puzzullo further knew, or was reckless in not knowing, that the financial projections that he created were false and misleading because they were based on false letters of intent and false pre-contracts. Puzzullo also knew, or was reckless in not knowing, that his consultant report was based on the fake letters of intent.

46. The false and misleading documents created by Puzzullo and the Prior Defendants were material to a reasonable investor, as well as actual investors, in the 2020 bonds and 2021 bonds. The revenue projections and Puzzullo's consultant report, both included in the Offering Memoranda, were important to investors when deciding whether to purchase the bonds because the bonds were revenue bonds and, as a consequence, interest and principal payments would be made from the Sports Complex's revenue. The letters of intent and pre-contracts, both of which provided support for the revenue projections, were also important to investors.

### V. Puzzullo Personally Profited from the Fraud.

47. Puzzullo personally profited from his fraudulent conduct. Sports USA's primary source of revenue was the bond proceeds obtained by Legacy Cares. Sports USA paid Puzzullo substantial payments from the ill-gotten gains obtained through his and the Prior Defendants' false and misleading statements and fraudulent scheme.

### VI. Legacy Cares Defaulted on the Bonds and Filed Bankruptcy Proceedings.

48. The Sports Complex opened in January 2022 to a fraction of the demand touted in the Offering Memoranda and other materials underlying the bonds. The Sports Complex reported

first-year revenue of under $28 million for 2022, well short of the $96 million in revenue falsely projected in the Offering Memoranda.

49. As a consequence, the bonds quickly failed. Legacy Cares was unable to make interest and principal payments to bondholders, and, in October 2022, the bond trustee declared the 2020 bonds and 2021 bonds to be in default. Attempts by Legacy Cares, Randy Miller, and Chad Miller to refinance the bonds were unsuccessful.

50. As a result of the severe revenue shortfall, Legacy Cares filed Chapter 11 bankruptcy in May 2023 and was put in a liquidation trust. According to bankruptcy filings, the Sports Complex was ultimately sold for less than $26 million to a new company which now operates it. Due to the disappointing revenue, as well as a large number of construction and contractor liens burdening the Sports Complex, the bond investors' bankruptcy claim recouped less than $2.5 million of the $284 million invested.

51. Sports USA is now defunct, and all services for the Sports Complex previously provided by Sports USA have been taken over by another entity.

## FIRST CLAIM FOR RELIEF

*Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder*

52. The Commission realleges and incorporates by reference paragraphs 1 through 51.

53. By engaging in the conduct described above, Puzzullo, directly or indirectly, in connection with the purchase or sale of securities, by use of means or instrumentalities of interstate commerce, or of the mails:

> a. Employed devices, schemes, or artifices to defraud;
> 
> b. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

13

    c.    Engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers of securities.

54. By reason of the foregoing, Puzzullo violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

*Violations of Section 17(a) of the Securities Act*

55. The Commission realleges and incorporates by reference paragraphs 1 through 51.

56. By engaging in the conduct described above, Puzzullo, directly or indirectly, in the offer or sale of securities, by use of the means of instruments of transportation or communication in interstate commerce or by use of the mails:

    a.    employed devices, schemes, or artifices to defraud;

    b.    obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c.    engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers.

57. By reason of the foregoing, Puzzullo violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

I.

Permanently enjoining Puzzullo from directly or indirectly violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder, and Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

II.

Permanently restraining and enjoining Puzzullo from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Puzzullo from purchasing or selling securities for his own personal accounts, pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)];

III.

Requiring Puzzullo to disgorge all ill-gotten gains received as a result of his unlawful conduct plus prejudgment interest thereon, pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

IV.

Requiring Puzzullo to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

V.

Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

VI.

Granting such other and further relief as this Court may determine to be just and necessary.

**JURY DEMAND**

The Commission demands a trial by jury.

Dated: March 3, 2026

Respectfully submitted,

*William T. Salzmann*
William T. Salzmann
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION